NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LISA MARIE BATTAGLIA, | : | |
| Plaintiff, | : | Case No. 17-cv-5928 (BRM) |
| v. | : | |
| NANCY A. BERRYHILL,<br>Commissioner of Social Security Administration, | : | **OPINION** |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Lisa Marie Battaglia's ("Battaglia") appeal from the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying her application for Title II disability and disability insurance benefits. (Tr. 1–31.) Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the matter is **AFFIRMED**.

---

[1] Defendant adopted the decision of the Administrative Law Judge ("ALJ") which concluded Battaglia was not disabled under the relevant standards, and issued a written decision denying her application on April 26, 2016 (the "ALJ Decision"). (Tr. 1–31.)

## I. BACKGROUND

On October 17, 2013, Battaglia filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of December 24, 2012. (Tr. 202-03.) Her claim was denied initially on February 28, 2014. (*Id.* at 76-97.) On March 14, 2014, Battaglia filed a written request for an administrative hearing. (*Id.* at 99.) On February 29, 2016, a hearing was held where Battaglia appeared and testified via video. (*Id.* at 39-40.) Impartial vocational expert, Melissa Fass Karlin, also appeared and testified at the hearing. (*Id.*)

On April 26, 2016, the ALJ concluded Battaglia was not disabled. (Tr. 31.) Specifically, she found Battaglia: (1) met the insured status requirements of the Social Security Act through December 31, 2017; (2) had not engaged in substantial gainful activity since December 24, 2012; (3) had the following severe impairments: cervical and lumbar degenerative disc disease, lumbar radiculopathy, obesity, degenerative joint disease of the bilateral knees, an organic brain syndrome with headaches, depression, and anxiety; (4) did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments; (5) had a Residual Functional Capacity ("RFC") to perform light work with some limitations and some exceptions; (6) was unable to perform past relevant work; and (7) had not been under disability, as defined in the Social Security Act, from December 24, 2012, through the date of the decision. (Tr. 22-30.) The Appeals Council denied Battaglia's request for review, rendering the ALJ's decision the Commissioner's final decision. (Tr. 1–7.) Having exhausted her administrative remedies, Battaglia filed this action seeking review of the Commissioner's final decision on August 9, 2017. (Compl. (ECF No. 1.))

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146–47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her

impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146–47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679–80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d

Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146–47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

Battaglia only takes issue with step four of the five-step sequential evaluation process and argues the ALJ erred in determining she had the RFC to perform light work. (ECF No. 17-1 at 9-11.) She argues the ALJ: (1) failed to consider all relevant evidence; (2) failed to afford substantial weight to the opinion of Battaglia's treating physician; and (3) that the ALJ's decision was not

supported by substantial evidence and appeared to have been motivated by Battaglia's refusal to agree to the proposed amended onset dat. (*Id.*) The Court will address these arguments collectively.

> A. **Battaglia's Challenge to the ALJ's Determination that She Had the Residual Functional Capacity to Perform Light Work**

Battaglia argues the ALJ erred in determining that she had the RFC to perform light work, since the ALJ did not consider all relevant evidence. (ECF No. 17-1 at 9-10.) Specifically, she contends "the ALJ failed to consider significant medical evidence," such as Dr. Perel and the psychiatric consultative examiner's findings. (*Id.*) The Commissioner argues substantial evidence supports her RFC finding and that she gave little weight to Dr. Perel and the psychiatric consultative examiner's opinions because they opinions were not supported by evidence or their own examinations. (ECF No. 20 (Def.'s Br.) at 14, 19.)

"The determination of a claimant's RFC is the exclusive responsibility of the ALJ." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), and 416.946). In making this determination, "the ALJ must consider all evidence before him." *Id.* (citations omitted). However, the ALJ need only include in the RFC those limitations he finds credible. *Id.* (citation omitted). Therefore, if the ALJ finds some of the claimant's limitations less than credible, the ALJ can exclude them from the RFC. (*Id.*)

In the case at bar, the ALJ's RFC analysis consists of approximately four and one-half pages replete with evidence from the record explaining why the undersigned found that the claimant has the residual functional capacity to perform light work. The ALJ's RFC assessment accounted for the fact that Battaglia went to physical therapy three times a week; that she initially had balance issues and that she had cervical and lumbar degenerative disc disease, lumbar radiculopathy, degenerative joint disease of the knees; organic brain syndrome, depression, and anxiety. Nevertheless, the ALJ offered specific,

factually supported reasons for his conclusion as to why Battaglia was still able to perform light work regardless of her limitations. Precisely, the ALJ found:

> With respect to her cervical impairments, her February 28, 2013 cervical MRI report stated that the claimant had disc bulges at C4 to CS and CS to C6 (Exhibit B2F). The claimant's April 30, 2013 through August 12, 2013 AC Physical Therapy records showed that her cervical ranges of motion and muscle strength were improving such that by August 2013 she was described as having only mild deficits (Exhibit Bl0F).
>
> As per her AC Physical Therapy records, she was discharged from physical therapy on November 1, 2013 for non-compliance as she was not attending her therapy sessions and she has not responded to her attempts to contact and reschedule her appointments (Exhibit B15F).
>
> Physician Assistant Keith Kouroupos wrote on August 19, 2013 that even though the claimant reported eight months of radiating neck pain, upon examination she had a full range of cervical motion with only minimal abnormal findings (Exhibit B9F).
>
> Her July 17, 2015 cervical MRI report showed that the claimant disc space narrowing and posterior spurring at C4 to CS, CS to C6 and C6 to C7 (Exhibit B36F). Dr. Janak Royal noted on September 18, 2015 physical examination report that the claimant's neck exhibited painful movement but she exhibited no focal neurological deficits upon testing (Exhibit B36F).
>
> By October 26, 2015 the claimant's cervical MRI report stated that the claimant had disc herniations at C4 to CS and CS to C6 and a disc bulge at C6 to C7 (Exhibit B41F). The claimant was given cervical epidural injections on December 5, 2015 and January 5, 2016 (Exhibit B60F).
>
> The claimant also developed lumbar degenerative disc disease (Exhibit 42F). She visited Riverview Medical Center on August 26, 2015 for lower back pain but upon admission, the claimant's examination revealed that she had moderate, right low back pain with painful ranges of motion, normal spinal alignment and muscle spasm (Exhibit V42F).
>
> She was otherwise neurologically intact and her same day lumbar x-ray showed that she had grade 1 anterolisthesis of LS on S1; no acute fractures; and she had facet arthropathy at L4 to LS and

LS to S1 (Exhibit B42F). She was given 600mg of Motrin and discharged the same day in stable condition (Exhibit B42F).

By October 16, 2015 the claimant's lumbar MRI showed that the claimant had a disc bulge at L3 to L4; a disc herniation contributing to mild bilateral neural foraminal encroachment at L4 to LS; and disc bulging at LS to Sl (Exhibit B41F). Her February 18, 2016 EMG also showed that she had right L4, LS and left LS, Sl radiculopathy (Exhibit B59F).

Dr. Bhavini Chandarana noted in a January 14, 2016 physical examination report that the claimant had cervical and lumbar degenerative disc disease with associated radiculitis but upon examination, she had a normal cervical range of motion and a normal gait (Exhibit B59F). Dr. Chandarana noted that the claimant should continue chiropractic care and physical therapy as it helped to reduce her pain and that she could continue to use Tramadol for moderate to severe pain relief (Exhibit B59F).

She also developed degenerative joint disease in her bilateral knees (Exhibit 29F). She told Physician Assistant Keith Kouroupos on August 1, 2014 that she was experiencing bilateral knee pain and crepitus, but upon examination her gait was normal and she had no neurological deficits (Exhibit B49F). Her September 6, 2014 bilateral knee x-ray report stated that she had only slight nan-owing of the medial joint compartment bilaterally; and no intraosseous abnormality or effusion (Exhibit B49F).

Dr. William Kennard noted in a November 9, 2015 physical examination report that the claimant was "okay for" activities of daily living (Exhibit B56F). Dr. Kennard wrote that the claimant presented for complaints of bilateral knee pain and an examination revealing bilateral varus alignment but her motor and sensory exams were normal; she exhibited no knee instability; she exhibited crepitation; her neurologic and vascular examinations were intact; and her knee ranges of motion were satisfactory(Exhibit B56F).

Physical Therapist Edilberto Estomo noted in an October 27, 2015 physical therapy evaluation that while the claimant complains of severe knee pain, her bilateral knee ranges of motion were only limited by 15% and her muscle strength in both knees was 4-/5 (Exhibit B57F). The claimant has also been diagnosed with obesity, she underwent a gastric bypass on October 24, 2005 (Exhibit B6F).

9

With respect to the physical functional limitations, Physical Therapist Agnieszka Antecka noted in a May 2, 2013 initial physical therapy evaluation that the claimant was only mildly limited in standing, sitting and bending (Exhibit B15F).

As a result of a January 15, 2014 physical consultative examination, Dr. Sujit Chakrabarti wrote that the claimant was sitting comfortably on the examination table; she had no problem walking into the room; no problem climbing the examination table; she exhibited no motor or sensory loss; she exhibited back spasm; she had full ranges of cervical and lumbar motion; and she had positive straight leg raising (Exhibit B27F).

As far as her organic mental disorder, anxiety and depression, the claimant was involved in a motor vehicle accident on December 23, 2012 and she sustained head injuries but her same day head CT scan was normal (Exhibit B1F). Her February 25, 2013 brain MRI report stated that the claimant had a normal brain with no intracerebral hemorrhage, edema, mass effect, or infarct is demonstrated (Exhibit B2F).

Dr. Alan Perel noted in March 20, 2013 neurological examination report that the claimant reported that she was unable to function but she said that Topamax helped her headaches, and her brain MRI was unremarkable (Exhibit B13F).

Dr. Rosemarie Basile noted in a June 27, 2013 neuropsychological examination report that the claimant had depressive and anxiety symptoms in the severe range; her intellect ranged from average to low average; and her cognitive strengths were noted to be in non-verbal reasoning and immediate span of attention while she had weaknesses in her working memory and speed of information (Exhibit B8F).

Dr. Stephen Nadler noted in a November 25, 2013 physical examination repo11 that the claimant was neurologically intact and she was alert and oriented to time, place and person, she could name significant current events, although her responses to questions were slow (Exhibit B26F).

Dr. Lefkowitz wrote in a December 27, 2013 psychological consultative examination report noted the claimant appeared anxious and depressed and had trouble focusing and a poor processing ability but her mental state was otherwise normal (Exhibit B25F).

Her February 25, 2016 Adult Intellectual Testing showed that the claimant had an average premorbid IQ even if she tested as having primarily low average to average verbal, memory and working IQs (Exhibit B55F).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The claimant's testimony that she needs a knee replacement and that she is limited to an extremely restricted range of sedentary exertion is not consistent with a record showing that despite her pain complaints, the claimant had only minimally limited knee ranges of motion, can perform her own activities of daily living and she has had a good response to physical therapy and medication.

Her records show that as early as August 2013 the claimant's cervical ranges of motion and related functional deficits were described as "mild." Even though her records show that by October 2015 she developed cervical disc herniations, she holds no evidence of cervical nerve root impingement.

By late 2015 the claimant also developed lumbar disc disease and radiculopathy but her January 2016 physical examinations showed that she continued to exhibit a normal gait and had a normal cervical ranges of motion. Her treating physician wrote in January 2016 that the claimant's pain improved with chiropractic care and physical therapy while her medication was also described as responding well to pain medication.

She was described as able to perform activities of daily living in November 2015 while her physical therapist wrote in May 2013 that the claimant had only mild exertional limitations and the physical consultative examiner noted in January 2014 that the claimant could sit comfortably, had no problem walking, she had full ranges of cervical and lumbar motion and she had positive straight leg raising. Although the record indicates that the claimant is obese, there is no evidence in the record that it has significantly limited her physical functioning

With respect to the organic brain syndrome, depression and anxiety, the claimant noted during her December 2013

psychological consultative examination that she did not wish to take psychotropic medication, there is no evidence of regular outpatient psychological treatment in the record and although the record shows that she has tested as having impaired attention and concentration, her Full Scale IQ has tested as normal. Since nothing in the medical evidence of record shows that the claimant is precluded from performing mental or physical-related work activities, she is not disabled alleged.

Even though she is not a medically acceptable source, Physical Therapist Antecka's May 2013 opinion that the claimant had only mild limitations in sitting, standing and walking is given some weight to the extent that the claimant did not have debilitating functional limitations since her medical records show that her pain and functional limitations can improve with physical therapy and medication while her neurological examinations have remained essentially normal despite being diagnosed with radiculopathy late last year.

Dr. Perel's 2013 opinions that the claimant was significantly disabled is given little weight because he repeatedly noted that the claimant's neurological examinations have been primarily benign with a normal gait, only some decreased in sensation, normal reflexes, normal cranial nerves and some attention and concentration difficulties (Exhibit B3F). Accordingly, his opinion that the claimant is disabled is not supported by his own treatment notes.

Dr. Perel's October 1, 2013 and October 1, 2013 cervical spine medical source statement opinions that the claimant was restricted to less than sedentary exe1tion, she would be off task 25% of the workday and he would miss more than four days a month is given little weight because, again, it is not supported by Dr. Perel's own records that the claimant is neurologically intact, physical examination reports showing that the claimant's musculoskeletal impairments responded positively to physical therapy and medication in addition to records showing while she has some low IQ scores and impaired concentration, her Full Scale IQ is normal (Exhibits B13F, B46F). For those same reasons, Dr. William Kennard's November 2015 opinion that the claimant may do sedentary work is given little weight (Exhibit 56F).

(Tr. 25-29.)

Contrary to Battaglia's contentions, the ALJ properly considered Dr. Perel's and the psychiatric consultative examiner's opinions and afforded them little weight. In making a disability determination, the ALJ must consider all evidence before him. *See, e.g.*, *Plummer*, 186 F.3d at 433; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence. *Burnett*, 220 F.3d at 121; *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In *Burnett*, the Third Circuit held the ALJ had not properly decided an evidentiary issue because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Consequently, an ALJ's failure to note if evidence that contradicts his findings was considered, or to explain why such information was not credited, are grounds for a remand. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999). However, this rule does not require an ALJ to explicitly discuss every piece of relevant evidence in his decision. *Fargnoli*, 247 F.3d at 42. For example, an ALJ may be entitled to overlook evidence that is neither pertinent, relevant, nor particularly probative. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

Additionally, when the record presents inconsistencies with a physician's ultimate opinion or where the physician's notes actually undermine his own opinion, an ALJ may appropriately discount the physician's opinion. *See Burke v. Comm'r of Soc. Sec.*, 317 F. App'x 240, 243-44 (3d Cir. 2009). Although the ALJ must not "reject evidence for no reason or for the wrong reason, [he] may choose whom to credit when considering conflicting evidence." *Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) (quotations omitted). A reviewing court "may not re-weigh the evidence." *Id.*

Thus, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman*, 606 F. App'x at 679-80 (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones*, 954 F.2d at 129.

Here, as demonstrated in the block quote above, the ALJ clearly articulated in his RFC analysis Dr. Perel's opinion and why he rejected it and afforded it less weight. He further incorporated the psychiatric consultative examiner's opinion, contrary to Battaglia's argument, and demonstrated how it was inconsistent with his own opinion and that of other professionals since he "noted the claimant appeared anxious and depressed and had trouble focusing and a poor processing ability but her mental state was otherwise normal." (Tr 27.)

As such, the ALJ sufficiently indicated why he chose to reject Dr. Perel's opinion and afford it less weight, even though he was the treating physician. The record also contains substantial evidence that supports the ALJ's decision to reject and afford little weight to the psychiatric consultative examiner's report. The function of this Court is simply to ensure that the ALJ's decision was supported by substantial evidence. This Court cannot apply a more stringent standard than that of "substantial evidence," nor can it act as the fact-finder. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004). The administrative record provides this Court with "more than a mere scintilla" of evidence to support the ALJ's decision at step four. *Jones v.*

*Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (defining substantial evidence as "less than a preponderance of the evidence but more than a mere scintilla").

Lastly, Battaglia argues the ALJ's decision was motivated by her refusal to agree to a proposed amended onset disability date. (ECF No. 17-1 at 10-11.) There is no merit to this argument. At the beginning of the administrative hearing and following Battaglia's counsel's opening statement, the ALJ stated she would entertain an amended onset date to August 1, 2015, based on Battaglia's second motor vehicle accident in August 2015. (Tr. 45.) Battaglia declined the ALJ's offer based. (*Id.* at 45-47.)

Regardless of the ALJ's suggestion, Battaglia received a fair administrative hearing, wherein the ALJ considered the evidence as she was required to do. The ALJ did not persuade Battaglia's counsel to change the date. Instead, the ALJ raised the issue of amending the onset date, and Battaglia's counsel chose not to do so. "Nothing improper occurred." *Reynolds v. Astrue*, No. 11-559, 2012 WL 1107649, at *14 (D. Md. Mar. 30, 2012) (finding an ALJ may raise the issue of amending the claimant's onset date where the claimant is represented by counsel). Accordingly, the ALJ's decision and Commissioner's denial of review at step-four is **AFFIRMED**.

V. **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.


**Date:** July 31, 2019                              */s/ Brian R. Martinotti*
                                                                               **HON. BRIAN R. MARTINOTTI**
                                                                               UNITED STATES DISTRICT JUDGE